Thomas v. Aldi Good morning, your honors. Austin Bursick Johns for the appellant, Omar Thomas. May it please the court. First, thank you, panel, for your accommodation regarding my laptop this morning. I hope to be a little smoother because of it. I think it's remarkable that some of the facts that parties agree on here are that Mr. Thomas was locked in his cell by himself and moments later, because of a request by a different inmate, was being assaulted inside that cell. And I think that it's particularly relevant to the arguments today because it speaks to the availability of the procedural remedies that were ostensibly available when he submitted a grievance regarding what should have been a pretty notorious event, in my opinion. And the response he received from the DOC was, we need you to provide more details about how it was that you were assaulted inside the cell. Can I just ask you to raise your podium, raise up the podium just a little bit? I'm having a little difficulty hearing every word. Thank you. I mean, in that grievance he was trying to get training for the officers on safety protocols, right? I believe the way he phrased it, Your Honor, was asking that the corrections officers be more vigilant to inmate safety, which seems like a fair request under the service standards. Right, but you don't think it's unreasonable to say we need more details to understand what we can do to improve the training of the officers? I don't think it's reasonable, Your Honor. I think if you read that grievance… But if it's so unreasonable, it means that the grievance procedures were not available? I think taken as a whole, given some of the facts that are in dispute about what Mr. Thomas said, how many times he forewarned the DOC about this kind of threat, how many times he claimed to have filed grievances or had oral exchanges, taken as a whole, and then considering that response, I think it does speak to the unavailability of the remedy. Wasn't he also seeking primarily protective custody? I mean, I understand the training was with regard to the assault in his cell, but he was seeking protective custody, which led him, he claimed, to assault another inmate. But the Department of Corrections found that he assaulted the other inmate to get creds, if you will, with the bloods game. But was it really the remedy he was seeking in the grievance protective custody, which he never received, and assuming we were to find he didn't exhaust his administrative remedy? One of the arguments you made is that there's the exception that he received the relief he was seeking. But he didn't, right? With regard to the second assault, he received an apology, and with regard to the protective custody request, what he got was recreation time alone. So how can you claim that the exception applies to him when he didn't get the relief he was seeking in the grievance procedures? And there were two different grievances, as Your Honor knows. And in the first, he certainly was seeking the protective custody. And, you know, they're separate, but they're not. I mean, if it weren't for the fact that in the second situation it was exactly what he was telling the DOC about in the first situation, I think they'd be completely separate. He did obtain recreation alone status, which is not just recreating alone, but also being alone for the most part in your cell and in the shower and so on. I think the appellant also testified that he could be with other people on the same status, which is actually similar to protective custody, I believe. And again, I think taking a step back and looking at what dead ends, frankly, the plaintiff ran into in pursuing these procedures and considering that despite that, he was able to obtain status that gave him pretty much exactly what he was asking for to be separated from his- Is it exactly what he was asking for? What is the difference between recreational loan status and protective custody? I can pull that up, Your Honor, but while I'm – I could read it to you, but I think the most important point is that what he was asking for was to be separated from these members of the blood gang. And you're saying he was satisfied when he got the recreational loan status? Yes. Can I ask you this question? Even if he was satisfied, you know, in Ruggiero and some other cases, like we said that an inmate needs to exhaust the formal procedures even if he got everything he wanted through informal means. So in a case where he got something that's kind of like what he wanted through informal means, why wouldn't the same rule apply and say he has to at least file a formal grievance? I think that whether – you know, the definition from Ross of whether a remedy is available, it's not in a vacuum. It's whether there's actually something to be accomplished from pursuing this procedure to the end. And if the plaintiff accomplished what it was that he was seeking, which is to be separated from these blood members- Yeah, but in Ruggiero, didn't we say that the inmate received everything he was seeking, but he still had to go through the formal grievance process because that's part of the PLRA requirements? Yes, Your Honor. However- And so even if he got everything he wanted, he would still say he had to file a formal grievance. So in this case, you're saying, well, he got something like what he wanted, and maybe he was satisfied with that. But isn't that less compelling than our previous cases? The point I'm attempting to make, maybe not well, is that I think it needs to be looked at not in a vacuum of there were policies on paper that he could have kept pursuing, but in reality with those procedures- You're saying the distinction between this case and that case is here you think that the grievance procedures were not available to him. Correct. So the fact that they returned his grievance to do the informal resolution form and to do the separate forms, and then the other one was returned for the separate forms and some other reasons, that was enough to show that they weren't going to take any grievances seriously? Not just that- But when they returned it, didn't they give him instructions on how to properly file the grievance? I think that there were instructions on the paper, Your Honor. But they were for things such as break this up into two different requests. When you're talking about- I kind of agree. It's not obvious why he needs to break it up into two separate requests. Maybe it's overly bureaucratic. But we would have to say that it was so impenetrable that the procedures were effectively not available. I mean, can we really say that? I mean, aren't there grievances in this system that actually are processed and considered? I think that there are, Your Honor. And the irony is I think somebody needs to go through the process several times before they figure out how to successfully complete the process. Versus a situation like this where you have a very valid claim for deliberate indifference and the plaintiff is stopped from accomplishing everything on paper because, in reality, he's just running into dead end after dead end. And it's not just the returns of those grievances, but also his testimony about the other ways that he would attempt to follow the letter of the law with these administrative directives. Can I, just in helping me understand the record, as to the first filing, this is the filing that relates to Corrigan and his seeking protective custody status. He had transferred out of Corrigan to Northern by that time, right? So when he's instructed to pursue informal resolution, he's in another facility. Am I right about that? Yes, he is in another facility. And by that point, he's already requested from his testimony twice in writing and once orally, if not more than that, the protective custody. Then he files the grievance. Then he's transferred. Then he gets the recreational loan status. So at that point, I think, practically speaking, he's not just run into a dead end, but he's also accomplished what it is that he's trying to accomplish. And are you aware of whether it would be possible to pursue the informal process from another facility? I believe it would be. How would you go about that, do you know? I would be guessing, Your Honor, but I believe the fact that he was in a different facility would not stop him from continuing to file the appellate grievances and so on. But the fact is that he already accomplished what it was that he was attempting to accomplish. But that argument, I mean, you have a problem with that argument with Ruggiero. I mean, I'm having difficulty seeing why Ruggiero doesn't, my colleague has already pursued this point, doesn't foreclose that argument. I think it needs to be, I think this situation needs to be read as both accomplishing the remedy he sought and the unavailability of the on-paper procedures together. That when you look at the two together, I think that they amount to unavailability procedures. So you're saying that because the grievances were returned with instructions to file them separately and all those rules, and because he testified that they kept giving him the runaround when he would try to complain about things, that based on that, we can conclude that there's no dispute that the remedies were unavailable to him. I argue, Your Honor, that there is plentiful material for genuine issues of fact here and that this should not have been decided on. Are you saying at least there's an issue that it might not have been available? Right. Okay. And I'm not sure if the three minutes incorporates my reservation time, Your Honor. We reserve three minutes rebuttal time. Okay. So I'll, I'm way over. All right. I'll stop there. Thank you. Good morning. May it please the court. My name is Thaddeus Beauchene and I represent the appellees in this case. Your Honors, the PLRA does not permit an inmate to manufacture exhaustion of administrative steps by simply claiming that he is, quote, mostly satisfied with or has relative satisfaction with an outcome purportedly obtained through informal resolution. That is especially the case where, as here, no reasonable finder of fact could plausibly conclude that the plaintiff successfully resolved anything informally or otherwise prior to commencing suit. Can I ask about the petitioner here was seeking protective custody status, correct? Is that something you could grieve but also appeal from the denial of the special management decision? Am I understanding the rules correctly? You are, Your Honor. And so on that point, so this relates to the March 2018 grievance. And so there's a couple points I'd like to make on that. The way the, this is not an appeal under Section 8 of the administrative directive. And there's a couple reasons for that. The first, when it came in, and this was received at Northern, all right, and then it gets sent back to Corrigan for disposition because it related to incidents that would have been at Corrigan. When it's received, it's logged as a grievance. And so what that means is DOC understood that to be a grievance. That's number one. And the second thing is, even if this court were to interpret it as a denial of a protective custody request, it still would have been procedurally defective. Now, this issue hasn't been briefed. It's not really. It was pretty troubling to me because when I look at this page A131, which is this filing, there's no cover sheet on this one. And maybe you can help me understand this. But on the second filing, there is a cover sheet. The cover sheet would give the filer an opportunity to check special management decision or grievance. So looking at the face of this, is there a way that I can tell, looking at page A131, that it's a grievance and not an appeal from the denial of a special custody? Yes, Your Honor. So A130, so the page just before. So when you look at the, this relates to the March 2018 grievance that we're referring to here. And you can tell that by a number of ways. First, the March 2018 grievance is dated March 4th. It's received here at A130. It says date 3-6-2018. And the box that's checked off is grievance. It's not checked off as appeal. And so to your point, that's where, and then I'll just also note. Who checks off that box? My understanding, Your Honor, is that would have been DOC officials. So the way they look at this, they understood it to be a grievance. But the missing cover sheet would have been prepared by the person making the filing, right? That's my understanding, Your Honor. And I can't explain in the record why it's not in here. It's just sort of startling because A139 does have one of those cover sheets. And there's a check to I am filing a grievance check. And there's not a filing I am filing a special management decision. So the cover sheet would have been helpful in understanding from the filer's perspective what he understood he was doing. I understand your point, Your Honor. And just making sure I understand the implications of that. If this were an appeal from the denial of special protection of custody status, then you wouldn't have to pursue informal resolution, right? It would not be correct to return it to the filer. That's correct, Your Honor. But I would just like to note that even if this court were to interpret this filing as an appeal over protective custody denial, it's still defective for at least two reasons. And the first is it's untimely, all right? And so you have to file it within 15 days of that denial. This is filed in March of 2018, all right? The denial would have occurred in November of 2017. That's number one. So that would have been untimely. The second thing is it was returned without disposition. And one of the reasons it was returned without disposition is because it contained multiple requests for relief in a single CN-9602 form. And so the multiple requests there would be in this, you'd look at section E-2 in the administrative directive. And that applies to all grievances. And the way you'd look at that grievance, then, is one, it'd be arguably a protective custody denial, which we submit that it's not. But even if that were the case, it still contains claims of deliberate indifference, which falls under section six. And so it still would have been procedurally defective for those two reasons. But he had to file a separate document for the different cases? He would, Your Honor, yes. He would. Why is that required? It's required under the directive, which is referred to E-2. Since the opposing counsel is making an argument about how the remedies are unavailable because they're making it difficult to pursue them, I guess I'm just curious why it is that he has to pursue each thing in a different form. I think the simplest answer to that, Your Honors, is DOC could respond to those separate remedies in different ways. So in protective custody denial, just as a hypothetical, perhaps they were right. And I'm not saying that that is correct here. But that would be one answer. But with respect to the deliberate indifference, perhaps it would have been denied or they wouldn't have agreed with that. That's a separate answer. DOC, when they receive a single CN-9602 form, they can only respond to it in one of four ways. And so, in fact, it actually is helpful to the inmate to require them to submit separate grievances. So that way, going forward, it can clarify the issues and assist them with giving relief that would be appropriate under the circumstances. So I understand that that may at first blush appear to be bureaucratic. But it actually is consistent with the PLRA to clarify the issues and help the inmates and get relief that they're seeking. Can I ask the point of the exhaustion requirements? So if someone has an ongoing problem, it makes sense to say, well, you should try to allow the prison to remedy that problem before you go in and seek damages in a lawsuit. But here, he has incidents that happened in the past and he just wants compensation for the harm he suffered. So it's not like any remedy that was available through the grievance process was going to go and provide him damages, was it? Well, he's seeking damages in this case, right? In this case. But is that a remedy that was available through the grievance process? Money damages, Your Honor? No, it wouldn't have been. Right, so if you're talking about some incident that happened in the past for which you want compensation, why does it make sense to say there's a remedy for that you need to get from the prison? Well, I think that's consistent with some of the questions the court has raised today with Ruggiero to allow the prisons the opportunity to correct and take remedial action when appropriate. Right, but that's what I'm saying. So if somebody has an ongoing problem, then maybe the prison needs to take remedial action. But if you're trying to seek compensation for something that happened in the past and there's no remedy available that provides for that compensation, what is the function of this requirement? Well, two points on that, Your Honor. I think the court can start by looking at Booth. I mean, Booth, the U.S. Supreme Court decision in Booth, where the relief that's requested really doesn't matter. The question is whether, and that would be financial compensation. What matters is whether the process itself can provide some possible relief. And that runs through all the way through Ross and this Court's decisions. I understand that we said that, but I guess I'm asking, does it make sense? I think it does. There's a bunch of remedies that are available that won't do anything for him. It's not actually something that he wants. Why does it make sense to require him to go through that process and seek those remedies? Well, I think it does make sense, Your Honor, because that allows DOC to take corrective action and address problems internally, and that's consistent with the PLRA, to minimize the amount of litigation to allow corrective action when appropriate. The amount of litigation, right? Because the incident happened in the past, right? He was involved in an assault. So what would the pursuing the grievance procedure, how would it affect the amount of litigation? How would it affect, I'm sorry, Your Honor? The amount of litigation. Like, it wouldn't preclude a lawsuit if he was assaulted in the past or there was some kind of deliberate indifference by the prison in the past, right? He'd still have a claim. Well, I think that it would allow DOC to take action that would be appropriate, not just with Mr. the Plaintiff in this case, but on a more global scale if appropriate. So he's sort of obligated to raise the issue of what happened to him so that the prison can fix the problem for everybody in the prison? I'm not saying he's obligated to do that, but that's just one example. Well, he's obligated to do it as a precondition of bringing the lawsuit, right, because it's an exhaustion requirement. It actually doesn't provide a remedy to him. It provides a remedy to the whole prison for that kind of incident not to happen again. That could be part of it, Your Honor. And if I can, I know my time is running out. I just did have a couple of points I would like to respond to some of the arguments that came up. Well, actually, I have one other question about this, which is his first grievance was returned because he hadn't pursued informal resolution, right? So he pursues informal resolution, and he gets recreational loan status, right? So, like, didn't he do exactly what the prison told him to do? It said, like, you can't file this grievance yet. You haven't pursued informal resolution. So he says, okay, and he goes around and asks for informal resolution, and he gets this protective status. Why isn't that doing exactly what the prison asked him to do? So two points. It was returned without disposition because he didn't attempt written informal resolution. So that's a key distinction. You have to pursue written informal. The second point, this covers what I wanted to touch on about the argument that there may be an issue of fact about the recreational loan status being satisfactory to plaintiff such that he actually- That is a question I had for you, and I'm hoping you're getting to that point, which is what is the difference between protective custody and recreational time alone? Because he's saying recreational time alone and protective custody, they're the same. So I got the relief I was seeking, and therefore, I don't have to exhaust. And that is where I was going, Your Honor. And I think his statement is he's mostly satisfied with that. But one of the main differences between protective custody and recreational loan status, and there's many, but one of the main ones is inmates who are on protective custody are housed separate and apart from general population. And that's in the record in multiple places. Recreational loan status is different, especially when you're part of the security risk group program like the plaintiff was in this case. You're housed among and with other SRG inmates. You're not apart. And so that leads to what I wanted to get to, which is there isn't an issue of fact here that he was satisfied with recreational loan status. Plaintiff wanted protective custody. That's what he wanted. And so we've cited at page 16 of our brief two portions of the deposition testimony where he's not satisfied. But I'd like to, if I can, just quote for the court an excerpt that I think kind of captures this vividly, that he's not satisfied with recreational loan status. Now, it's not in the joint appendix, but it is in his deposition. And so what I'm about to quote, it's at page 8 of 68-3, and that's page 88, excuse me. That's captured by the electronic filing system at lines 9 through 18. What's the page again? I'm sorry. Page 88, Your Honor, as reflected by the electronic filing system. And so just, again, for context, at Northern, he's transferred there at the end of February 2018. He gets placed on a recreational loan status almost immediately. It's within days or weeks he gets that. And he's asked at his deposition, while at Northern, were there any safety incidents, any concerns that you had? And he says, yes, the entire time I did. And as he's explaining the alleged harassment and threats he's receiving, he says the following. He says, just going through it, explaining to these officers, meaning the correctional officers, that, hey, I don't think it's good for my mental, meaning mental health, seriously. Like, I would like protective custody, not a cell by myself around these same people that's threatening me. I could still hear it. They could still get at me. I'm not really feeling safe here, even though the doors are closed or whatever. I would like to go to protective custody. That was denied, and I was sent to McDougall Walker, meaning McDougall Walker Correctional Institution. That sworn testimony, along with the- So he says that. Does the exhaustion issue turn on that? So if he had said, actually, I was totally happy with recreational loan status. It turned out to be everything I really wanted. Would that mean that he had exhausted? It would not, Your Honor. And I think this also gets to the point about- It doesn't really matter if he says he's satisfied with it or not satisfied with it. Just answer that question. Let me see. What were you going to say? Well, what I was going to say was, Your Honor, is that no reasonable find or fact here could conclude that he was satisfied with recreational loan status. Because he found that unsatisfactory, he was permitted to file grievances. He did so in this case, but they were defective. There's no dispute about that. And there's no dispute that he did not use all steps that DOC held out to address those issues. And so he had to grieve those things, and he didn't. And so, again, protective custody was not- he didn't find the purported use of informal resolution satisfactory to him. But your position would be, even if he did find it satisfactory, even if he had testified under oath, actually, I didn't know about recreational loan when I was asking for protective custody. Now that I know about it, it turns out that that's totally everything I really wanted, and I'm pretty happy with it. You still would say he had to file a written formal grievance, because you think that's what our case law requires, right? So I'm saying both, but I think you'd have to also just look to the directive itself, what it would require. But under Ruggiero, I think that's where Your Honor is going. There are bigger issues at play. And I know I'm over my time, but I would just like to, with the Court's permission, just respond to two points about the availability. Let me just ask before you do that. He also testified in his deposition that he appealed the denial of protective custody status, correct? His testimony on that point is he probably did. It's a little- Probably, he said at one point, if I'm remembering correctly, I'm pretty sure I probably did. At another point, he says, so the appealing takes- it's a real process. You appeal it. It goes to this person and that person. Doesn't that yet further raise the question of whether we should be- whether there's a question of fact as to just what that first appeal was? And then if you could also address, he said that it would be untimely in any effect, because it dated back to November. But wasn't there a protective custody denial at another event in January? So this would be February. Your adversary says February 22nd is the date we should be focusing on. So if I can, Your Honor, I'd like to direct the Court's attention to the- with respect to the timeliness, I'll just go in reverse order on that. And so it's at A- if I can just have it. All right. So I'm at A-152. And this is Section 8 dealing with the appeal of a special management decision. And so it says- and it says the inmate administrative remedy form- and I'm about three lines from Section 8- has to be dropped in the administrative remedy box within 15 calendar days of a decision regarding, and Section E is protective custody. Now the reason we know that this March 2018 grievance relates to the initial denial is because he's referring to the fight that occurred in January of 2018. And so to the extent that there's a second denial, that's not the- the grievance itself is relating to the first January fight that happened. And so just as a matter of timing, he could not have possibly been referring to the subsequent purported denial of protective custody that came after the fight, if that makes sense. Let me try to unpack that a little bit more. I didn't say that very articulately, Your Honor. I apologize. So the grievance is filed, and he's referring to the fight in January of 2018. And he's saying that you denied my protective custody request. And he's referring to the fact that the denial of the protective custody request led to the fight of January 2018. That's his claim. In the context of the investigation into the fight, he makes a second request for protective custody. And so the way he's framing that March 2018 grievance, he's referring to the initial denial to protective custody, which would have led to the fight, which is why he had to engage in the preemptive attack. And so that's why that March 2018 grievance is referring to the initial November denial, as opposed to anything that would have been subsequent. I think I understand your argument. Okay. And again, I know I'm well over my time, but with the court's permission, I do want to just respond very briefly to the dead end argument. If that's okay. And so there's two additional points in the record that I would like to direct the court's attention to regarding why this was not a dead end. Okay. And it's District Court Docket 54-9, paragraph 32. That's Defendant Barbudo's declaration. And as part of that, he's saying that following the June 2018 assault, he received coaching where he discussed with his supervisor the incident and protocols to follow such that the incident doesn't happen again in the future. And the second point in the record is at A148. And there's a provision in the directive that talks about if a grievance is upheld, DOC shall provide an appropriate and meaningful remedy. And it lists several non-exhaustive types of corrective action that the DOC could take. Even though it doesn't tell us that they actually are providing those remedies. What it goes to, though, Your Honors, is it is capable of providing relief. And then the declaration goes to- It is capable of providing relief if, in fact, they make it too complicated and give grieving inmates the run around all the time and so don't let the grievances be processed. Well, here, Your Honor, I mean, at the very least, we have a record where he submitted three grievances. And he knows how to submit things into administrative remedies boxes. This is not a, respectfully, this is not a shrinking violet. He knows how to access the system. He just did it improperly. And so he was not thwarted. There was no issue in that with respect to that. And with respect to Barbuto's declaration, again, it just shows the DOC was willing to provide relief had he pursued it properly. Now- Let me just ask one other question. With regard to the second filing, could you just help me understand what additional information would be needed to investigate the incident? And it was sent back to him for more information. But he gives the date on which his cell door popped open in error and he was assaulted. And he gives the time in which it occurred. And there would be a video of that incident. What's the rationale for requiring the inmate to give more information at that point for the detainee? Two points on that, Your Honor. I think that goes to Judge Nash's question earlier. And so just looking at this from the boots on the ground, Arc Bennett is the one who received this grievance 16 days after the incident in question. And so she's looking at it with a fresh set of eyes. And I understand and appreciate that at first blush there's reason to pause with this grievance. I appreciate that. But she's looking at it with a fresh set of eyes and consistent with the PLRA trying to sharpen and clarify the issues, she simply asks for clarity on what do you mean by be more vigilant, training for inmate safety. What do you mean by that? And with providing that additional information, she can direct DOC to give a better sense of how that training might look. And additionally, the request for the FOIA information just, I know this doesn't directly answer Your Honor's question, but that is my understanding handled by an entirely different process. It doesn't go to the Arc. It would go to the FOIA liaison. And so really what Arc Bennett was doing. The grievance process can't tell him who the officer was who was involved in opening his cell? He has to file a FOIA request to find that out? I think that the Arc Bennett was simply trying to be helpful because part of the issue there is when you have incident reports that might have the name of the correctional officer, there has to, my understanding is, that process requires significant amount or part of that it requires redactions. And so it's not just as simple as we can give you the name. You're saying he requested the incident report and not simply the name? I'm sorry? You're saying he requested the incident report and not simply the name? He requested both, Your Honor. I see. All right. I think I have taken up enough of everyone's time. I really do appreciate the court. And I would just ask that the court respectfully affirm the judgment. Thank you. We'll hear Rebecca. Thank you. Just to respond to a couple of factual points. Regarding the timeliness of the first grievance, I do address that on page 17 and 18 of my principled brief and point out that the first grievance was filed ten days after the plaintiff received the February 22, 2018, denial of his second request for protective custody. So the fact that, yes, he's referring to the fight, but he's also filing the grievance because after the fight, he requested protective custody. Regarding his satisfaction with the recreation alone status, there was testimony that there were aspects of recreation alone that he wasn't crazy about. But by and large, he was happy to be alone, and it did get him away from the blood numbers he was trying to get away from. And I do address that on pages 5 to 7 of my reply brief. And I think those two points speak to the larger issue, in my opinion, which is that there are plenty of factual disputes here. And this was decided on summary judgment, and I don't think it should have been. And lastly, I just wanted to turn to the policy behind the PLRA, which is to cut down on frivolous cases so that meritorious ones can go on. This is an example of a potentially meritorious claim of deliberate indifference here. I think the underlying circumstances I find to be outrageous. And I think the message that this sends to future detainees and prisoners and the Connecticut DOC, if the summary judgment is allowed to stand, is quite dangerous. If there are no further questions, thank you for your consideration. Thank you both, and we'll take the matter under advisement.